IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Vera Shepard Charlot, | ) | C/A No.: 3:11-579-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Honorable Michael B. Donley, Secretary | ) | |
| of the Air Force; Dawn M. Moore; and | ) | |
| Clayton D. Leishman, | ) | |
| | ) | |
| Defendants. | ) | |

Vera Shepard Charlot ("Plaintiff"), proceeding pro se, filed this employment

action against the Honorable Michael B. Donley, Secretary of the Air Force, Dawn M.

Moore, and Clayton D. Leishman asserting claims for (1) race discrimination in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (2)

retaliation in violation of Title VII; (3) hostile work environment in violation of Title VII;

and (4) defamation. [Entry #1].[1]

This matter comes before the court on the following motions: (1) Defendant's[2]

motion for summary judgment [Entry #111]; (2) Plaintiff's motion for summary

judgment [Entry #112]; (3) a motion to substitute the United States for the individual

---

[1] The Complaint also named Terry St. Peter as a party. By order dated August 9, 2012, the Honorable Margaret B. Seymour, United States District Judge, dismissed St. Peter from the case and dismissed Plaintiff's Title VII claims against Moore and Leishman. [Entry #119].
[2] Because Donley is the only remaining defendant on Plaintiff's Title VII claims that are the subject of the summary judgment motion, the undersigned refers to him as "Defendant" throughout.

defendants [Entry #128]; and (4) the United States' motion to dismiss Plaintiff's defamation claim [Entry #129].  All of the motions having been fully briefed, this matter is now ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned on January 1, 2012, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).   Because the motions are dispositive, this report and recommendation is entered for the district judge's consideration.  For the reasons that follow, the undersigned recommends that: (1) Defendant's motion for summary judgment [Entry #111] be granted in part and denied in part; (2) Plaintiff's motion for summary judgment [Entry #112] be denied; (3) the motion to substitute the United States for the individual defendants [Entry #128] be granted; and (4) the United States' motion to dismiss Plaintiff's defamation claim [Entry #129] be granted.

I.      Factual Background

Plaintiff is a black female who began working as a Training Technician for the Defense Language Institute's English Language Center ("DLI") at Fort Jackson, South Carolina on February 5, 2007. [Entry #111-3 at 1]. She was supervised by DLI Program Manager Clayton Leishman, a white male. *Id*. Dawn Moore, a white[3] female stationed at Lackland Air Force Base in Texas, is Leishman's immediate supervisor and was Plaintiff's second-line supervisor. *Id*. On December 5, 2008, Plaintiff was promoted to Primary Test Control Officer ("PTC") and Leishman remained an Alternative Test

---

[3] Although Plaintiff and Defendant appear to agree that Moore is white [Entry #111-1 at 3], the investigatory report indicates that she is black. [Entry #111-18 at 8]. Viewing the facts in the light most favorable to Plaintiff, the undersigned will assume Moore is white.

Control Officer. [Entry #111-4]. Branda Scott, a white female, was also an Alternative Test Control Officer. *Id*. As PTC, Plaintiff was assigned a set of keys used to secure testing documents to prevent test compromise.

On April 2 and 7, 2009, Plaintiff arrived ten minutes late to work. Leishman told her she needed to complete a form for 0.25 hours of annual leave (the smallest increment of leave available) for each instance. [Entry #111-3 at 17]. According to Plaintiff, although Leishman had stated in staff meetings on three prior occasions that everyone needed to be on time for work, he had never acted upon it. *Id*. at 18. At the end of April 2009, Plaintiff made initial contact with the EEO office. *Id*. at 1. She sent written documentation to the Lackland EEO office on May 15, 2009 and notified Leishman of the same on May 19. *Id*. at 1–2.

On Sunday, May 31, while she was out of town on leave, Plaintiff left Mr. Leishman a voice mail on the office phone that she was sick and would not return to work the following morning when her leave was to expire. *Id*. at 14. She called in again at 7:45 a.m. on Monday morning (June 1) to say that she did not feel well enough to travel and requested leave for June 1 and 2. *Id*. Leishman called Plaintiff back on her cell phone shortly thereafter and left a voice message directing Plaintiff to call him back on his cell phone "with specifics" or he would not approve leave for her June 2 travel back. *Id*. Plaintiff called him back on his office phone and left a message asking that he give her Moore's phone number so Plaintiff could request the leave through her. *Id*. Plaintiff testified that she could have called Leishman on his cell phone as he requested, but "chose not to." [Entry #111-6 at 7]. When Plaintiff returned to work on June 3, Leishman

refused to approve the leave for June 2, and informed Plaintiff that he was charging her with being absent without leave ("AWOL"). [Entry #111-3 at 15].

On June 22, 2009, Leishman denied Plaintiff's request to take leave for July 6–9, based on mission requirements, as Leishman would be out of the office and could not cover Plaintiff's duties. [Entry #111-18 at 18]. On June 24, 2009, Plaintiff submitted an FMLA request for July 6–10. [Entry #111-3 at 11–12]. According to Leishman, Plaintiff's FMLA request contained insufficient medical information. [Entry #111-18 at 18]. Leishman called the doctor's office and left a message requesting more information, although he did not speak to Plaintiff's medical professionals. [Entry #111-3 at 13]. Leishman approved the FMLA request on July 2, but Plaintiff alleges that he told her in an elevated tone that he and Scott had to cancel their leave to take care of Plaintiff's duties while on leave. [Entry #111-3 at 12]. Leishman also told Plaintiff that he felt that she had purposely requested leave in conjunction with the July 4th holiday, and Plaintiff agreed that she "wanted to go see my family and get some rest per [her] doctor's advice." *Id*. at 10.

Plaintiff was counseled for failing to properly secure testing materials on July 6, 16, and 22, 2009. [Entry #111-7]. Plaintiff denies that she failed to secure the testing materials. [Entry #111-3 at 4–6]. As a result of the alleged failure to secure the materials, Leishman ordered Plaintiff to turn in her keys to him or to Scott at the end of each day and to retrieve the keys from them in the morning. [Entry #111-7]. On July 22, Plaintiff filed a formal charge of discrimination. [Entry #111-18 at 1]. On July 23, Leishman reminded Plaintiff of the new policy, but she failed to return the keys to him at the end of

the day. [Entry #111-11]. Plaintiff informed Leishman via email that she had to load the copier with toner after a meeting and did not have time to walk down the hall to find Leishman to give him the keys, as it was past the end of her duty day. *Id*.

On July 22, Plaintiff notified Leishman that her doctor was requiring that she take sick leave due to her "diminished mental state resulting from workplace stress." [Entry #111-10]. Leishman informed her that she needed to provide documentation for any sick leave. *Id*. On July 24, Plaintiff informed Leishman that, although she was unable to get documentation from her doctor, she was invoking her FMLA rights to take leave. *Id*. After consulting with the personnel department, Leishman signed the leave request as approved pending documentation. *Id*. According to Scott, who witnessed the event, when Leishman gave the signed form to Plaintiff in her office, she told him that he was harassing her and yelled at him to "get out." *Id*.

On Saturday, July 25, Plaintiff sent Leishman an e-mail stating that she would be filing a complaint against him for an ethics violation. [Entry #111-12 at 7]. She alleged that he had a "close personal relationship" with Scott, that Scott is widely rumored to be his "girlfriend," and that Scott's promotion to program manager "reeks of [his] pulling strings to get her to Ft. Jackson." *Id*. Leishman forwarded the email to Moore and Human Resources Specialist Troy Phillips asking, "How far is she allowed to go and at what point has she gone too far? This has gone well beyond simple heckling on her part and I shouldn't have to take it and just continue with business as usual while she aggressively and actively works to fabricate stories with the sole purpose of making me look bad." *Id*.

On August 4, Plaintiff again refused to surrender her keys to Leishman at the end of the duty day. [Entry #111-12 at 1–3]. By e-mail on August 4, she stated, "I refuse to surrender the keys that you presented to me as part of my job as TCO without justification. I will not allow you to continue to try and demean me and subject me to your whims because you are angry. . . . This is also non-negotiable!" *Id*. Despite explicit direction that she return the keys at the end of the day, Plaintiff failed to do so. *Id*. She did not respond to e-mail request for the keys and, although she was in her office, would not pick up the telephone. *Id*.

On August 14, Plaintiff again took FMLA leave for her "anxiety disorder [that] was being exacerbated by the stress [she] was experiencing at work." [Entry #111-6 at 4–5]. On Monday, August 17, an answer sheet was found on the copier. [Entry #111-13]. According to Defendant, this created a test compromise issue, because the answer sheet had not been secured. The ensuing investigation into the security breach required questioning of all instructors and a search of all the students, their belongings, and their barracks. *Id*. It was determined that Plaintiff had left the answer sheet on the copier. As a result, her TCO appointment was rescinded and she was prohibited from further access to testing materials or student records. *Id*.

On August 19, during the period that she was out on approved FMLA, Plaintiff came into the office work area and refused to leave when requested. [Entry #111-18 at 21]. Leishman called the Military Police to escort her form the building. On September 2, while still on approved FMLA, she called Leishman and left a message that she would be

coming to the work area. The military police were again called to prevent her from reporting to work while on leave. [Entry #1 at 8].

On September 28, Leishman proposed to Moore that Plaintiff be suspended for ten days alleging the following:

a. Failing to secure a folder of answer sheets on July 6;

b. Leaving answer sheets in the inbox when they should have been secured in a locked cabinet;

c. Leaving a testing cabinet unlocked overnight on July 22;

d. Yelling at Leishman when he attempted to discuss her leave request on July 24;

e. Sending out a slanderous e-mail on July 25; and

f. Failing to return the keys as requested on August 4.

[Entry #111-14]. Moore approved the suspension. [Entry #111-15]. On November 23, Plaintiff was temporarily detailed to a new location and a new supervisor. [Entry #111-3 at 1]. Plaintiff also alleges that Moore referred to her as "crazy" in front of other supervisors and that Leishman's actions and statements related to this lawsuit have also been defamatory. [Entry #1].

II.    Discussion

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts

to the non–movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B.     Analysis

1.     Exhaustion

Plaintiff failed to administratively exhaust claims of discrimination not contained in her EEO complaint, last amended on March 2, 2010. Her failure to do so is fatal to those claims. "Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also* 42 U.S.C. § 2000e–5(f)(1). Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. *See, e.g., Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (stating that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"); *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995) (stating that "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite"); *see also* 42 U.S.C. § 2000e–5(f).

In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir.1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge' ") (quoting *Equal Employment Opportunity Comm'n v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976)).

As Plaintiff last amended her EEOC complaint on March 2, 2010, the allegations taking place after that amendment were not presented in her EEOC complaint.[4] [Entry #111-18 at 1]. Additionally, her EEOC documents are devoid of the claim that: "On July 14, 2009, [Leishman] followed the Plaintiff to her office, berated her, and behaved in a threatening manner toward her when he violated her personal space by stepping toward her, behind her desk, and leaning toward her, yelling." [Entry #1 at ¶ 7]. Therefore, it is

---

[4] There is some evidence that Plaintiff has brought an EEO complaint related to some of her unexhausted allegations in the instant case. *See* Entry #116-3. However, this court has no indication that Plaintiff has received a decision on these claims, which appear to have been alleged as a class action, and Plaintiff has not disputed Defendant's claim that particular allegations of her complaint had not been exhausted. Therefore, Plaintiff has failed to invoke the subject matter jurisdiction of the court by demonstrating these allegations have been exhausted.

recommended that Plaintiff's claims of discrimination based on ¶ 7 of her complaint and on alleged acts after March 2, 2010 be dismissed for lack of subject matter jurisdiction.

### 2. Disparate Treatment

Plaintiff alleges a claim for disparate treatment on the grounds that she was charged annual leave for being tardy and was prohibited from working while on FMLA leave. To establish a prima facie case of race discrimination under Title VII, a plaintiff must prove: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

### a. Charged annual leave for being tardy

First, Plaintiff alleges race discrimination because Leishman charged her annual leave for being ten minutes late to work on two occasions in April 2009. Defendant argues that Plaintiff was not satisfactorily performing her job because she was ten minutes tardy. In determining whether Plaintiff was satisfactorily performing her job, the court looks at how Plaintiff was performing prior to the incident at issue in the lawsuit. *See, e.g., Belton v. Chester Lancaster Disabilties and Special Needs Board, Inc.*, No. 0:05-1649-MBS, 2007 WL 528064, *8 (D.S.C. 2007). Defendant does not dispute that

Plaintiff was satisfactorily performing her job prior to April 2009. Therefore, for the purposes of this motion, Plaintiff has proved the first element of her prima facie case.

Defendant recites that Plaintiff has not shown that she suffered an adverse employment action, but Defendant provides no argument related to this element. [Entry #111-1 at 12–13]. Viewing the facts in the light most favorable to Plaintiff, as the court must, Plaintiff has shown she suffered an adverse employment action for the purposes of her prima facie case because her allotted annual leave was decreased by Leishman's docking of two 0.25 hours of leave.

Defendant argues Plaintiff has failed to show similarly-situated employees outside of her protected class were treated more favorably. Plaintiff argues that white employees were routinely tardy and were not charged with annual leave. [Entry #116-1 at 1]. When a plaintiff bases her discrimination claim on a similarly-situated comparator, it is the plaintiff's "task to demonstrate that the comparator is indeed similarly situated." *Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, *2 (4th Cir. July 6, 2010) (citing *Tex. Dep't. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981)). "Plaintiff [is] required to show that they are similar in all relevant respects to their comparator. Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Here, the court cannot evaluate whether other employees were similarly situated because Plaintiff fails to cite to any specific incident in which a white employee was tardy and was not charged. Therefore, Plaintiff has failed to

set forth a prima facie case of discrimination based on her being charged annual leave for arriving late.

### b. Prohibiting Plaintiff from working while on FMLA leave

Plaintiff also alleges race discrimination based on Leishman prohibiting her from coming to the office to work on her office computer while she was on FMLA leave. Assuming that Plaintiff has set forth the first three elements of a prima facie case, Defendant argues that she has failed to show that any similarly-situated comparators outside of her protected class were treated more favorably. Plaintiff states that Leishman worked while on FMLA leave and also allowed an employee on maternity leave to come to the office. [Entry #1]. However, Defendant argues that neither Leishman nor an employee on maternity leave are similarly situated to Plaintiff because her FMLA leave was based on exacerbation of her anxiety disorder caused by workplace stress. [Entry #111-6 at 9–12]. Given this diagnosis, returning to the workplace during her leave could further exacerbate her condition. Plaintiff has set forth no evidence disputing this difference. Therefore, because Plaintiff cannot identify any similar-situated comparators who were treated more favorably, she has failed to set forth a prima facie case of racial discrimination. The undersigned recommends Defendant be granted summary judgment on Plaintiff's claims for race discrimination based on disparate treatment.

### 2.    Retaliation Claim

Plaintiff alleges a claim for retaliation on the grounds that she was charged as AWOL, removed from her TCO position, suspended for ten days, reassigned, directed not to contact Moore, and required to be accompanied by Scott to meetings with

Leishman. To set forth a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).

Plaintiff engaged in protected activity when she made initial contact with the EEO office at the end of April 2009 and filed a complaint on July 24, 2009. Defendant has not disputed that Plaintiff can set forth a prima facie case of retaliation related to her 10-day suspension. Therefore the burden shifts to Defendant to set forth a legitimate non-discriminatory reason for suspending her.

Defendant produced a legitimate, non-discriminatory reason for suspending Plaintiff by citing to the following incidents:

a. Failing to secure a folder of answer sheets on July 6;

b. Leaving answer sheets in the inbox when they should have been secured in a locked cabinet;

c. Leaving a testing cabinet unlocked overnight on July 22;

d. Yelling at Leishman when he attempted to discuss her leave request on July 24;

e. Sending out a slanderous e-mail on July 25; and

f. Failing to return the keys as requested on August 4.

[Entry #111-14]. Therefore, the burden shifts back to Plaintiff to show that Defendant's reasons for the suspension are pretextual. Plaintiff has cited no evidence showing that Defendant's reasons for suspending her were pretextual. Although Plaintiff alleges in her complaint that the suspension was "based partly on false and unsubstantiated allegations

made by Clayton Leishman and without consideration of the rebuttal submitted by the Plaintiff" [Entry #1 at 5], she has not submitted a copy of her rebuttal or otherwise specified which of the reasons were allegedly false and unsubstantiated. Therefore, the undersigned recommends Defendant be granted summary judgment on Plaintiff's claim of retaliation related to her ten-day suspension.

The undersigned notes that Plaintiff's complaint lists claims of retaliation related to several other exhausted and allegedly adverse employment actions that Defendant has not addressed in its motion for summary judgment. Therefore, the undersigned is constrained to recommend Defendant's motion for summary judgment be denied with respect to Plaintiff's claims of retaliation other than her 10-day suspension.

3.     Hostile Work Environment

Plaintiff alleges a claim for hostile work environment based on Leishman's requests for greater information related to her leave requests, his increased surveillance of Plaintiff, and his requirement that she surrender her filing cabinet keys to him at the end of the day. To establish a prima facie case of a hostile work environment under Title VII, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her race, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008).

Assuming the offending conduct was unwelcome and imputable to her employer, Plaintiff has failed to show that it was because of her race[5] or that it was sufficiently severe and pervasive.   Plaintiff's complaint lists the following claims allegedly contributing to the hostile work environment.

- Leishman called Plaintiff's doctor on June 30, 2009 related to her sick leave request;

- Leishman increased surveillance on Plaintiff, including: (a) listening outside of her office to a personal phone call, (b) holding meetings with her without providing her notice and with Scott as a witness, and (c) calling her on her cell phone to inquire about details concerning her absence at work;

- Leishman required her to call his cell phone on June 1, 2009 related to her request in a telephone message for approved leave for July 2, 2009;

- Leishman required that she surrender the filing cabinet keys to him at the end of each day.

[Entry #1 at ¶¶ 4, 5, 6, and 8].

Plaintiff must show that the work environment was not only subjectively hostile, but also objectively so.  *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).   Such proof depends upon the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.*  (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).   "[C]omplaints premised on nothing more than 'rude treatment by [coworkers],' *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006), 'callous behavior by

---

[5] Plaintiff's EEOC complaint alleged only a claim of hostile work environment based on her race. [Entry #111-18 at 1].

[one's] superiors,' *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or 'a routine difference of opinion and personality conflict with [one's] supervisor,' *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000), are not actionable under Title VII." *Id.* at 315–16.    Here, Plaintiff's allegations do not demonstrate the type of severe and pervasive conduct that alters the terms of her employment.    Plaintiff has not shown than any of the alleged actions were physically threatening or unreasonably interfered with her work. At most, Plaintiff has alleged Leishman closely scrutinized her work and leave requests, which is insufficient to show severe and pervasive conduct. Additionally, the record is devoid of evidence that the conduct at issue had any connection to Plaintiff's race.    Therefore, the undersigned recommends Defendant be granted summary judgment as to Plaintiff's hostile work environment claim.

### 4.    Plaintiff's Motion for Summary Judgment

Plaintiff also submitted a motion for summary judgment. [Entry #112]. However, Plaintiff's motion contains no references to the record, but only reiterates many of the allegations of her complaint and sets forth additional allegations.    Plaintiff fails to cite any authority in support of her claims or otherwise apply her allegations to the relevant law.    If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A court may not construct a party's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417–418 (7th Cir. 1993), nor should it "conjure up questions never squarely presented," *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985). Plaintiff cannot rely on conclusory allegations of discrimination. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (explaining that conclusory allegations of discrimination are insufficient); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (a plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of [ ] discrimination." (internal quotation omitted)). As Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(c)(1), the undersigned recommends her motion for summary judgment be denied.

> 5.    Defamation Claim/Substitution of the United States for Leishman and Moore

Plaintiff has also brought a claim for defamation against Leishman and Moore ("Individual Employees"). On September 20, 2012, the United States filed a Notice of Substitution of Parties [Entry #128] pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"). The United States separately filed a motion to dismiss Plaintiff's defamation claim based on sovereign immunity [Entry #129].

> a.  Substitution of the United States under the Westfall Act

The Westfall Act grants a federal employee immunity from suit when "acting within the scope of his office or employment at the time of the incident out of which the

claim arose." 28 U.S.C. § 2679(d)(1). The Supreme Court has noted "that the Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as a defendant." *Osborn v. Haley*, 549 U.S. 225, 228 (2007) (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995)). Following this lead, the Fourth Circuit has held that the certification serves as prima facie evidence or creates a presumption that the federal employee was acting within the scope of his employment at the relevant time. *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997) ("We specifically hold that the certification satisfies the government's prima facie burden but does not carry any evidentiary weight unless it details and explains the bases for its conclusions.")

The Attorney General's certification is conclusive unless challenged. *Gutierrez de Martinez v. Drug Enforcement Administration*, 111 F.3d 1148, 1153 (4th Cir. 1997). A challenge to the certification "shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." *Id.*; *see also Goldstein v. Moatz*, 364 F.3d 205, 220 (4th Cir. 2004); *and Maron*, 126 F.3d at 323 ("We join with our sister circuits in placing the burden of proof on the Plaintiff to refute the scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment.").

In *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000), the Fourth Circuit articulated the burden-shifting scheme:

> [T]he plaintiff has the burden of persuasion to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment. If the plaintiff presents persuasive evidence refuting the certification, the burden shifts to the United States to provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment. To carry its burden, the plaintiff must submit specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation.

*Id.* (internal quotation marks and citations omitted). The *Borneman* court continues: "[a]t all stages of the process, it is for the district court to weigh the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual disputes." *Id.* Only if a plaintiff presents persuasive evidence rebutting the certification does the burden shift to the United States to come forward with evidence and analysis supporting the certification.

Here, the United States Attorney for the District of South Carolina[6] has certified that, at the time of the conduct alleged, the Individual Employees were acting within the scope of their employment. Plaintiff objected to this certification in her response to the motion to dismiss. [Entry #132]. Plaintiff argues that Moore was on her lunch break when she allegedly referred to Plaintiff as "crazy" and was therefore not within the scope of her employment. However, in her sur-reply, Plaintiff admits that she has received conflicting versions of when Moore allegedly referred to Plaintiff as "crazy" to other supervisors. [Entry #134]. Plaintiff argues that Moore's statement would be inappropriate regardless of when it happened. However, the question for the court is whether Plaintiff has met her

---

[6] The Attorney General has delegated certification authority to the United States Attorney for the district where the civil action is brought. 28 C.F.R. § 15.4 (2006).

burden of rebutting the certification that Moore's alleged statement was made in the scope of her employment. Plaintiff has not met this burden, as she admits that there are conflicting versions surrounding Moore's statement.

With regard to Leishman, Plaintiff argues he was not acting in the scope of his employment because his statements were made in his capacity as a witness in an EEO investigation. [Entry #132]. In South Carolina, "[i]f the servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may exceed his authority." *Kase v. Ebert*, 707 S.E.2d 456, 458 (S.C. App. 2011) (citations omitted). "On the other hand, if the servant acts for some independent purpose of his own, wholly disconnected with the furtherance of his master's business, his conduct falls outside the scope of his employment." *Id*. Here, Leishman was acting within the scope of his employment because he made the alleged statements during an employment investigation of charges made by another employee about his supervision. Such an action is considered in furtherance of his master's business even if he exceeded his authority. Therefore, Plaintiff has not rebutted that Leishman was acting within the scope of his employment when he made allegedly defamatory statements to the EEO investigator.

Therefore, the undersigned recommends the court substitute the United States as the sole defendant with respect to Plaintiff's cause of action for defamation.

b. The FTCA's application to defamation claims

Upon the substitution of the United States as defendant, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., applies to the suit. Through the FTCA,

Congress has waived sovereign immunity for certain tort claims against the United States. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188 (1936). However, the FTCA does not waive sovereign immunity for libel and slander:

> The provisions of this chapter and section 1346(b) of this title shall not apply to . . .
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . .

28 U.S.C. § 2680(h). If a claim against the government falls within an exception to the FTCA, the cause of action must be dismissed for want of federal subject matter jurisdiction. *Dalehite v. United States*, 346 U.S. 15, 3 (1953); *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 967 (4th Cir. 1992).

The Fourth Circuit has previous applied the FTCA to bar defamation claims against the federal government. *Talbert v. U.S.*, 932 F.2d 1064, 1067 (4th Cir. 1991); *see also*, *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 316 (4th Cir. 2012) ("And even if Shirvinski had sought damages form the Coast Guard, his claim would have been barred by the FTCA's preservation of sovereign immunity against defamation actions.") Therefore, because the United States has not waived its immunity with regard to defamation claims, the undersigned recommends that Plaintiff's defamation claim against the United States be dismissed.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that: (1) Defendant's motion for summary judgment [Entry #111] be granted in part and denied in part; (2) Plaintiff's motion for summary judgment [Entry #112] be denied; (3) the motion to

substitute the United States for the individual defendants [Entry #128] be granted; and (4) the United States' motion to dismiss Plaintiff's defamation claim [Entry #129] be granted.[7]

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 31, 2013                                        Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[7] Because Defendants did not argue for summary judgment on all of Plaintiff's claims, it appears that some claims will proceed to trial independently of the District Judge's ruling on the instant Report and Recommendation absent the District Judge's modification of the scheduling order to allow dispositive motions to be filed on those claims. *But see* Entry #106 (no further amendments to the scheduling order will be granted absent exceptional circumstances")

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).