## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Vera Shepard Charlot, | ) | Civil Action No. 3:11-00579-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Honorable Michael B. Donley, Secretary | ) | **ORDER AND OPINION** |
| of the Air Force; Dawn M. Moore; and | ) | |
| Clayton D. Leishman, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Vera Shepard Charlot ("Plaintiff") filed this action pro se against Defendants the Honorable Michael B. Donley ("Donley"), Secretary of the Air Force; Terry St. Peter[1] ("St. Peter"); Dawn M. Moore ("Moore"); and Clayton D. Leishman ("Leishman") (collectively "Defendants"), alleging that she was subjected to retaliation, discrimination and a hostile work environment because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. (ECF No. 1.) Plaintiff also asserts a state law claim for defamation. (Id.) This matter is before the court on motions for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motions") by Donley[2] and Plaintiff, and motions by the United States to substitute in place of Moore and Leishman and to dismiss Plaintiff's defamation claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1) motion"). (ECF Nos. 111, 112, 128, 129.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., the matter was

---

[1] The court dismissed St. Peter from the case on August 9, 2012. (See ECF No. 119.)

[2] On August 9, 2012, the court dismissed Plaintiff's Title VII claims against Moore and Leishman. (See ECF No. 119.) Donley is the only Defendant in the action with Title VII claims remaining against him.

referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On January 31, 2013, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant in part and deny in part Donley's motion for summary judgment, deny Plaintiff's motion for summary judgment, grant the motion of the United States to substitute for the individual Defendants, and grant the motion of the United States to dismiss Plaintiff's defamation claim. (ECF No. 137.) Plaintiff filed objections to the Report and Recommendation asking the court to not substitute the United States in Defendants' place and to further grant her motion for summary judgment. (ECF No. 140.) For the reasons set forth below, the court adopts the Report and Recommendation of the Magistrate Judge and **GRANTS** Donley's Rule 56 motion on Plaintiff's claims for discrimination and hostile work environment; **DENIES** Donley's Rule 56 motion on Plaintiff's retaliation claims; **DENIES** Plaintiff's Rule 56 motion; **GRANTS** the motion of the United States to substitute in the place of Leishman and Moore; and **GRANTS** the Rule 12(b)(1) motion of the United States regarding Plaintiff's defamation claim.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The background facts of this matter are thoroughly discussed in the Report and Recommendation. (<u>See</u> ECF No. 137 at 2-7.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate. The court adopts this summary as its own, and will only reference facts pertinent to the analysis of Plaintiff's claims.

Plaintiff is an African-American female and has been employed since February 5, 2007 as an Education and Training Technician for the Department of Air Force's English Language Center in the Defense Language Institute ("DLIELC") at Fort Jackson, South Carolina. (ECF

No. 111-3, p. 1.)  Plaintiff's primary job responsibilities are "to perform clerical, administrative, and training support duties directly related to the training functions of the English Language Training Program; support course instructors by performing a variety of administrative and technical tasks; create, update, and maintain student, faculty, and branch training records and files; prepare, update, create, and assemble training material documents and forms; and retrieve and disseminate information.  (ECF No. 111-18, p. 4.)  During the time period relevant to this action, Leishman, a white male, was Plaintiff's supervisor and Moore, a white female, was Leishman's supervisor and Plaintiff's second-line supervisor.  (ECF No. 111-3 at 1.)

Generally, Plaintiff complains in this matter about decisions affecting her employment that were made by Leishman.  More specifically, Plaintiff complains that Leishman among other things (1) required Plaintiff to use fifteen minutes of annual leave time when she arrived ten minutes late to work on April 2 and 7, 2009, whereas white employees were not treated in this manner (ECF No. 111-3 at 17); (2) refused to approve Plaintiff's request for annual leave for June 2, 2009, and informed Plaintiff that he was charging her with being absent without leave ("AWOL") (Id. at 14-15); (3) initially denied Plaintiff's request to take leave for July 6–9, 2009, alleging that her FMLA request contained insufficient medical information (ECF No. 111-18 at 18); and (4) accused and counseled Plaintiff for failing to properly secure testing materials on July 6, 16, and 22, 2009 (ECF No. 111-7).

On July 24, 2009, Plaintiff filed a complaint of discrimination, alleging harassment, a hostile work environment, and retaliation.[3]  (See ECF No. 111-18 at 1-3.)  On August 19 and September 2, 2009, Plaintiff came into the office work area when she was supposed to be out on FMLA leave for an "anxiety disorder," and she refused to leave the premises of the DLIELC

---

[3] Plaintiff subsequently amended her charge of discrimination on December 15, 2009, and March 2, 2010.  (ECF No. 111-18, p. 1.)

when requested.  (Id. at 21.)  In response to Plaintiff's refusal to leave, Leishman called the Military Police to remove Plaintiff from the offices of the DLIELC.  (ECF No. 1 at 8 ¶ 13.) Leishman allegedly told others that Plaintiff was a threat and that she had attempted to evade Military Police when they arrived to escort her from the offices of the DLIELC.  (Id. at ¶ 15.)

On September 28, 2009, Leishman proposed to Moore that Plaintiff be suspended for ten days for failure to follow instructions, negligence in the performance of duties, and making inappropriate comments towards supervisors.  (ECF No. 114.)  Plaintiff claims Leishman made false statements to Moore in the suspension proposal.  (ECF No. 1 at 8 ¶ 14.)  Nevertheless, Moore approved Plaintiff's suspension.  (ECF No. 111-15.)  On November 23, 2009, Plaintiff was temporarily assigned to a new location and a new supervisor.  (ECF No. 113-1 at 1.) Finally, in January or February 2010, Moore allegedly told an investigator that Plaintiff was "crazy" during the Investigations and Resolutions Division's investigation of Plaintiff's complaint of discrimination.  (ECF No. 1 at 8 ¶ 17.)

On October 29, 2010, the U.S. Equal Employment Opportunity Commission issued a decision on the merits regarding Plaintiff's complaint of discrimination.  (See ECF No. 1-3, p. 2.)  The Department of the Air Force adopted the EEOC's Decision on Record as its "Final Order" on December 9, 2010.  (Id.)  After receiving notice of the Air Force Review Boards' final agency decision, Plaintiff timely commenced this action on March 10, 2011.  (See ECF No. 1.) On October 11, 2011, Defendants filed a Rule 12(b)(1) motion regarding the Title VII claims against Moore, St. Peter, and Leishman and answered Plaintiff's complaint.  (ECF Nos. 42, 43.) Thereafter, both Plaintiff and Defendants filed Rule 56 motions on July 11, 2012.  (ECF No. 111, 112.)  Plaintiff filed opposition to Defendants' Rule 56 motion on July 20, 2012, and Defendants filed opposition to Plaintiff's Rule 56 motion on July 30, 2012.  (ECF Nos. 116,

4

117.)

On August 9, 2012, the court issued an order that (1) dismissed the Title VII claims against Moore, Leishman, and St. Peter, (2) dismissed the defamation claim against St. Peter, but allowed the claim to remain against Moore and Leishman, and (3) dismissed St. Peter from the action as a Defendant. (ECF No. 119.) On September 20, 2012, the United States filed a motion/notice to substitute in the place of Moore and Leishman with respect to Plaintiff's defamation claim. (ECF No. 128.) Also, on September 20, 2012, the United States filed a Rule 12(b)(1) motion on Plaintiff's defamation claim. (ECF No. 129.) Plaintiff filed opposition to the Rule 12(b)(1) motion of the United States on October 24, 2012, to which the United States filed a reply in support of the Rule 12(b)(1) motion on November 5, 2012. (ECF Nos. 132, 133.) On January 31, 2013, the Magistrate Judge issued the aforementioned Report and Recommendation, to which Plaintiff filed objections on February 11, 2013. (ECF Nos. 137, 140.)

On February 25, 2013, Donley filed Rule 12(b)(1) and Rule 56 motions as to all Plaintiff's retaliation claims. (ECF No. 141.) Plaintiff filed opposition to Donley's Rule 12(b)(1) and 56 motions on March 28, 2013. (ECF No. 144.)

## II.    LEGAL STANDARD

A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to

5

which only "general and conclusory" objections have been made—for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of

6

Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

C.     Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the court to liberally construe her pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Haines, 404 U.S. at 520.   Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

D.     Claims under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can establish claims under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).   Under that three-step framework, the plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence.  Evans v. Technologies Applications & Serv.

7

Co., 80 F.3d 954, 959 (4th Cir. 1996).  If the plaintiff establishes a prima facie case, an inference of discrimination is raised and the burden shifts to defendant to produce admissible evidence that the defendant took adverse employment action "for a legitimate, non-discriminatory reason." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254  (1981).  If defendant carries its burden, the presumption of discrimination created by the prima facie case disappears from the case, and the plaintiff must then prove by a preponderance of the evidence that defendant's articulated reason was a pretext for unlawful discrimination.  See id. at 253–55.  In order for a plaintiff to demonstrate pretext, he must prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).

Where there is direct evidence of discrimination, the McDonnell Douglas burden-shifting framework does not apply.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).

### 1.    *Discriminatory Discipline*

A plaintiff may establish discrimination in violation of Title VII by demonstrating that he was subjected to more severe discipline than that to which employees similarly situated to him, but outside plaintiff's protected class, had been subjected.  To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that his or her misconduct was of comparable seriousness to the misconduct of employees outside the protected class; and (3) that the discipline imposed on the plaintiff was more severe than that imposed on the similarly situated employees.  Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985).  In determining whether a plaintiff's misconduct is comparable in seriousness to that of employees outside the

protected class, a court should consider "the gravity of the offenses on a relative scale." Moore, 754 F.2d at 1107 (quoting Solem v. Helm, 463 U.S. 277 (1983)). Exact similarity between the compared offenses is not required. Cook, 988 F.2d at 511 ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances."). To be similarly situated, a "plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" See Ward v. City of N. Myrtle Beach, 457 F. Supp. 2d 625, 643 (D.S.C. 2006).

### 2.    Hostile Work Environment

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of her race. 42 U.S.C. § 2000e-2(a)(1). To state a prima facie case of a hostile work environment based on race, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir. 2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, she would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335

F.3d 325, 333 (4th Cir. 2003).  First, a plaintiff must show that she "subjectively perceive[d] the environment to be abusive."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).  Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998).  Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult."  Harris, 510 U.S. at 21.  Title VII is not a "general civility code."  Oncale, 523 U.S. at 80.  Further, when analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

    *3.    Retaliation*

Title VII also protects individuals from retaliation by providing that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, . . . in any manner in an investigation . . . under this subchapter." 42 U.S.C. § 2000e-3(a).  To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that she engaged in protected activity; (2) that her employer took an

adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action." See Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997). As to the first element, "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause." Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999). A plaintiff meets the second element of this test if "a reasonable employee would have found the challenged action materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The third element of the test may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

E.    State Law Claim for Defamation

        The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998). To establish a claim for defamation, the plaintiff must show (1) a false and defamatory statement was made concerning the plaintiff; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or

11

the existence of special harm caused by the publication.[4]  Fleming v. Rose, 567 S.E.2d 857, 860 (S.C. 2002).  "The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Id.

Defamatory communications may be in the form of libel or slander.  Holtzscheiter, 506 S.E.2d at 501.  "Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct."  Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C. Ct. App. 2001).

F.    Exhaustion of Administrative Remedies

In order to bring a lawsuit in the United States District Court under Title VII, a plaintiff is first required to properly exhaust his or her administrative remedies.  Specifically, Title VII requires that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state," within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e).

G.    Substitution of the United States for Individual Defendants

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, as amended

---

[4] The defamatory meaning of a message or statement may be obvious on the face of the statement, in which case the statement is defamatory per se.  Holtzscheiter, 506 S.E.2d at 501.  If the defamatory meaning is not clear unless the hearer knows facts or circumstances not contained in the statement itself, then the statement is defamatory per quod, and the plaintiff must introduce extrinsic facts to prove the defamatory meaning.  Id.  In addition to those classifications, a statement may be actionable per se, in which case the defendant is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages.  Id.  A statement may also not be actionable per se, in which case nothing is presumed and the plaintiff must plead and prove both common law malice and special damages.  Holtzscheiter, 506 S.E.2d at 501-02.  Libel is actionable per se if it involves "written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous . . . ."  Holtzscheiter, 506 S.E.2d at 502 (quoting Lesesne v. Willingham, 83 F. Supp. 918, 921 (E.D.S.C. 1949)).  If the trial judge can legally presume, because of the nature of the statement, that the plaintiff's reputation was hurt as a consequence of its publication, then the libel is actionable per se.  Id.

by the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679, provides that a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the negligent or wrongful acts or omissions of federal employees taken within the scope of their office or employment.5   28 U.S.C. § 2679(b)(1).  The Westfall Act further provides that, upon certification by the Attorney General that a federal employee was acting within the scope of his office or employment at the time of the incident out of which a state law claim arises, any civil action arising out of the incident shall be deemed an action against the United States, and the United States shall be substituted as sole defendant with respect to those claims.   28 U.S.C. § 2679(d)(1).   The Supreme Court has noted "that the Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as a defendant."  Osborn v. Haley, 549 U.S. 225, 228 (2007) (quoting Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432 (1995)).  Following this lead, the Fourth Circuit has held that the certification serves as prima facie evidence or creates a presumption that the federal employee was acting within the scope of his employment at the relevant time.  Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997) ("We specifically hold that the certification satisfies the government's prima facie burden but does not carry any evidentiary weight unless it details and explains the bases for its conclusions.")

The Attorney General's certification is conclusive unless challenged.  Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997).  A challenge to the certification "shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that

---

5 Relief against the United States requires waiver of sovereign immunity.  U.S. v. Testan, 424 U.S. 392, 399 (1976).  Through the FTCA, Congress has waived sovereign immunity for certain tort claims against the United States.  See 28 U.S.C. § 1346(b)(1).  This waiver is limited to those claims which are not excluded.

the defendant federal employee was acting outside the scope of his employment."  Id.; see also Goldstein v. Moatz, 364 F.3d 205, 220 (4th Cir. 2004); Maron, 126 F.3d at 323 ("We join with our sister circuits in placing the burden of proof on the Plaintiff to refute the scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment.").  In determining whether a Westfall Act certification should stand, the district court "must apply the law of the state in which the alleged tort occurred to ascertain whether the federal employee was acting within the scope of his employment."  Borneman v. U.S., 213 F.3d 819, 827 (4th Cir. 2000) (citing Maron, 126 F.3d at 323–24).

## III.   ANALYSIS

A.      The Report and Recommendation

Upon her review, the Magistrate Judge noted initially in the Report and Recommendation that "Plaintiff failed to administratively exhaust claims of discrimination not contained in her EEO complaint, last amended on March 2, 2010."  (ECF No. 137 at 8.)  More specifically on this point, the Magistrate Judge recommended dismissal for failure to exhaust claims in ¶ 7 of the complaint, asserting that "[o]n July 14, 2009, [Leishman] followed the Plaintiff to her office, berated her, and behaved in a threatening manner toward her when he violated her personal space by stepping toward her, behind her desk, and leaning toward her, yelling."  (Id. at 9-10 (citing ECF No. 1 at 7 ¶ 7).)

In the context of analyzing Plaintiff's discrimination claims under McDonnell Douglas, the Magistrate Judge found that Plaintiff could not establish a prima facie case of discriminatory discipline.  More specifically, the Magistrate Judge determined that Plaintiff failed to meet her burden of showing similarly situated employees that had been treated more favorably than she

14

was as it pertains to her claims that (1) she was required to use her annual leave for being late in April 2009, and (2) she was prohibited form coming to the office to work on her office computer while she was out on FMLA leave.  (Id. at 11-12.)  In support of her determination, the Magistrate Judge pointed out that Plaintiff did not either "cite to any specific incident in which a white employee was tardy and was not charged" or cite to white employees who were allowed to come into work after having been diagnosed with anxiety disorder caused by workplace stress like Plaintiff was.  (Id.)

Upon her review of Plaintiff's retaliation claims, the Magistrate Judge noted that Donley only addressed Plaintiff's claim of retaliation regarding her ten day suspension in his Rule 56 motion.  (Id. at 14.)  Regarding that specific claim, the Magistrate Judge determined that Donley both conceded that Plaintiff could establish a prima facie case of retaliation and offered legitimate, non-discriminatory reasons for the adverse employment actions suffered by Plaintiff. (Id. at 13.)  However, the Magistrate Judge determined that Plaintiff's retaliation claim regarding her ten day suspension ultimately fails because Plaintiff's evidence does not support the conclusion that the reasons she was subjected to adverse employment actions were pretextual. (Id.)  As to any other alleged claim of retaliation, the Magistrate Judge recommend denying Donley's motion for summary judgment.  (Id. at 14.)

The Magistrate Judge found that Plaintiff could not establish a hostile work environment claim.  (Id. at 15.)  Specifically, the Magistrate Judge found that Plaintiff could not show that the alleged harassment she received was because of her race.  (Id.)  The Magistrate Judge further found that the behavior alleged by Plaintiff did not rise to the severe and pervasive standard required to state a claim for a hostile work environment.  (Id. at 16 ("Plaintiff has not shown than any of the alleged actions were physically threatening or unreasonably interfered with her work.

15

At most, Plaintiff has alleged Leishman closely scrutinized her work and leave requests, which is insufficient to show severe and pervasive conduct.").)

Upon her review, the Magistrate Judge recommended denying Plaintiff's Rule 56 motion because she failed "to cite any authority in support of her claims or otherwise apply her allegations to the relevant law."  (Id.)

Finally, the Magistrate Judge recommends dismissing Plaintiff's claim for defamation that was alleged against Leishman and Moore.  (Id. at 21.)  The Attorney General, through the United States Attorney for the District of South Carolina, certified that Leishman and Moore were acting within the scope of their employment at the time of the allegedly defamatory conduct alleged by Plaintiff.  (Id. at 19.)  Moreover, Plaintiff failed to meet her burden of rebutting the certification that the allegedly defamatory comments were made in the scope of Leishman and Moore's employment.  (Id. at 20.)  Therefore, the Magistrate Judge asserts that the United States should replace Leishman and Moore as Defendants pursuant to the Westfall Act.  (Id.)  In this regard, the Magistrate Judge stated that once the United States is substituted for Leishman and Moore, the defamation claim is subject to dismissal for lack of subject matter jurisdiction because (1) upon the substitution of the United States as Defendant, the FTCA applies to the suit., and (2) the United States has not waived sovereign immunity for defamation.  (Id. at 20-21 (citing Talbert v. U.S., 932 F.2d 1064, 1067 (4th Cir. 1991); see also, Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 316 (4th Cir. 2012) ("And even if Shirvinski had sought damages form the Coast Guard, his claim would have been barred by the FTCA's preservation of sovereign immunity against defamation actions.").)

B.    Plaintiff's Objections to the Report and Recommendation

Plaintiff objects to the Magistrate Judge's Report and Recommendation.  Plaintiff asserts

that the Magistrate Judge's presentation of the facts was erroneous and inaccurate.  (ECF No. 140, p. 1.)  More specifically, Plaintiff asserts that the Magistrate Judge (1) erroneously attributed a race complaint against Moore when there was not one, (2) failed to address Plaintiff's admissions from white employees, Hannah Collier and Mary Barefoot, that they were not charged annual leave for being tardy, (3) failed to consider Plaintiff's rationale for not calling Leishman's cell phone when she requested annual leave on June 2, 2009, and (4) failed to consider Plaintiff's evidence from other employees that Leishman always treated her more harshly.  (Id. at 2-4.)  Plaintiff further asserts that she has successfully challenged the Attorney General's certification for Westfall Act protection for Leishman and Moore because they had to have acted outside the scope of their employment by engaging in defamation, an act that the Secretary of the Air Force has proclaimed he has "no tolerance" for.  (Id. at 7.)  Therefore, Plaintiff requests that the court not substitute the United States for Leishman and Moore and grant her motion for summary judgment.  (Id.)

C.    The Court's Review

1.    *Plaintiff's Claim for Discrimination*

The Magistrate Judge determined that Plaintiff's prima facie case of discriminatory discipline failed because she did not meet her burden of showing similarly-situated white employees who (1) were tardy and not charged for it, and (2) were allowed to work at the office while on FMLA leave for an anxiety disorder.  (ECF No. 137 at 11-12.)  In her objections, Plaintiff asserts that the Magistrate Judge failed to consider the admissions in evidence from white employees that they were not charged annual leave for being tardy and Leishman always treated Plaintiff more harshly.  (ECF No. 140 at 2, 4.)  Upon review, the court finds that even if Plaintiff could establish a prima facie case of discriminatory discipline, her claim would fail

17

because a reasonable jury could not find from Plaintiff's evidence that the reasons asserted for her discipline were a pretext for discrimination. Therefore, the court agrees with the Magistrate Judge that summary judgment should be granted to Donley on Plaintiff's claim for discriminatory discipline.

### 2. *Plaintiff's Claim for Retaliation*

The Magistrate Judge recommended granting Donley's Rule 56 motion on Plaintiff's claim of retaliation related to her ten day suspension. (ECF No. 137 at 14.) The Magistrate Judge did not recommend granting summary judgment on Plaintiff's other alleged claims of retaliation, finding that Donley failed to advance Rule 56 arguments as to other claims of retaliation. (Id.) In response to the Magistrate Judge's recommendation, Donley filed Rule 12(b)(1) and Rule 56 motions encompassing all of Plaintiff's retaliation claims on February 25, 2013. (See ECF No. 141.)

To avoid piecemeal adjudication of Plaintiff's claims for retaliation, the court recommits this matter to the Magistrate Judge with instructions to consider Donley's recently filed Rule 12(b)(1) and Rule 56 motions. In this regard, Donley's prior motion for summary judgment regarding Plaintiff's claim for retaliation is hereby denied.

### 3. *Plaintiff's Claim for Hostile Work Environment*

After careful review of the record, the court concurs in the Magistrate Judge's conclusion that Plaintiff has failed to establish a claim for hostile work environment in violation of Title VII. The conduct Plaintiff characterizes as harassment simply does not rise to the level required by law to establish a hostile work environment. Compare E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as bitches and a co-worker

in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks"), and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment), and Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf'" on an almost daily basis).  In this regard, Plaintiff has failed to meet her burden of establishing that the allegedly unwelcome treatment she received was because of her race.  Plaintiff has further failed to show that the unwelcome conduct was objectively hostile or abusive.  Based upon the foregoing, Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether she was subjected Plaintiff to a hostile work environment based on her race in violation of Title VII.  Therefore, Plaintiff's claim for hostile work environment fails as a matter of law.

   4. *Plaintiff's State Law Claim of Defamation*

   Plaintiff fails to specifically cite to any evidence, law, or policy to support her assertion that Leishman and Moore are not entitled to Westfall Act protection.  In this regard, Plaintiff's assertions and arguments, without more, are insufficient to rebut the Attorney General's certification.  Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1155 (4th Cir. 1997) (To carry her burden, the plaintiff must submit "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere

conclusory allegations and speculation."). Therefore, the court accepts the Magistrate Judge's recommendation that the United States should be substituted for Leishman and Moore pursuant to the Westfall Act. Accordingly, the notice/motion of the United States to substitute as Defendant for Leishman and Moore is hereby granted.

Upon review, the court further agrees with the Magistrate Judge that defamation is a claim that falls within the exceptions to the FTCA. (ECF No. 137 at 21 (citing 28 U.S.C. § 2680(h)).) Therefore, the court agrees with the Magistrate Judge that Plaintiff cannot maintain an action against the United States for defamation and, therefore, the claim must be dismissed. Accordingly, the motion of the United States to dismiss Plaintiff defamation claim is also granted.

## IV.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Donley's Rule 56 motion with respect to Plaintiff's claims for race discrimination and hostile work environment. (ECF No. 111.) The court **DENIES** Donley's Rule 56 motion on Plaintiff's retaliation claims and further **DENIES** Plaintiff's Rule 56 motion. (ECF Nos. 111, 112.) The court **GRANTS** the motion of the United States to substitute as Defendant for Leishman and Moore and further **GRANTS** the motion of the United States to dismiss Plaintiff's claim for defamation. (ECF Nos. 128, 129.) The matter is **RECOMMITTED** to the Magistrate Judge with instructions to consider Donley's recently filed (on February 25, 2013) Rule 12(b)(1) and Rule 56 motions as they relate to all of Plaintiff's properly exhausted claims for retaliation. (ECF No. 141.) The court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED**.


s/Margaret B. Seymour
MARGARET B. SEYMOUR
SENIOR UNITED STATES DISTRICT JUDGE

March 29, 2013
Columbia, South Carolina