IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Vera Shepard Charlot, ) | C/A No.: 3:11-579-MBS-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Honorable Michael B. Donley, ) | |
| Secretary of the Air Force, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Vera Shepard Charlot ("Plaintiff"), proceeding pro se, filed this employment action against the Honorable Michael B. Donley, Secretary of the Air Force ("Defendant") (the Air Force shall hereinafter be referred to as the "Agency"), and other individual defendants, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and a state law defamation claim. [Entry #1]. By order dated September 30, 2013 ("Order"), the court dismissed some of Plaintiff's claims. [Entry #158]. This case returns to the undersigned for a report and recommendation on Defendant's Motion for Summary Judgment on the retaliation claims not dismissed by the Order. [Entry #168]. Plaintiff filed a response in opposition to the motion [Entry #175], and the matter is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the pending motion is dispositive, this report and recommendation is entered for

the district judge's consideration. For the reasons that follow, the undersigned recommends that Defendant's motion for summary judgment [Entry #168] be granted.

I.      Factual Background

Plaintiff is an African-American female who was employed as an Education and Training Technician for the Defense Language Institute's English Language Center ("DLIELC") at Fort Jackson, South Carolina. [Entry #111-3 at 1]. During the relevant time period, Plaintiff's immediate supervisor was Clayton Leishman ("Leishman") and her second-line supervisor was Dawn Moore ("Moore"). *Id.* The facts pertinent to Plaintiff's claims are set forth in detail in the undersigned's report and recommendation dated January 31, 2013. [Entry #137].

On July 22, 2009, Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). [Entry #175-7 at 2]. On October 28, 2010, the EEOC issued a Decision on Record ("Decision") concluding Plaintiff had not been subjected to harassment, retaliation, or a hostile work environment. [Entry #141-6 at 1–29]. The Agency adopted the Decision as its final order on December 9, 2010. [Entry #1-3 at 2–4]. Plaintiff timely commenced this action on March 10, 2011. [Entry #1].

Plaintiff's complaint stated claims of discrimination, hostile work environment, retaliation, and defamation. *Id.* The complaint also named Terry St. Peter ("St. Peter"), Moore, and Leishman as parties. *Id.* By order dated August 9, 2012, the Honorable Margaret B. Seymour, United States District Judge, dismissed St. Peter from the case and dismissed Plaintiff's Title VII claims against Moore and Leishman. [Entry #119]. By

2

order dated March 29, 2013, Judge Seymour substituted the United States in the place of Moore and Leishman, and dismissed Plaintiff's defamation, discrimination, and hostile work environment claims. [Entry #145]. As a result of Judge Seymour's prior orders in this case, Plaintiff's retaliation claim against Defendant is the only remaining claim.

II.     Discussion

   A.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in her favor. *Id.* at 255.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972), and *Haines v. Kerner*, 404 U.S. 519 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine dispute of material

3

fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

B.  Analysis

In support of her retaliation claim, Plaintiff alleged discrete instances of conduct that she contends were retaliatory in nature. [Entry #1 at 3–6]. Defendant's motion seeks summary judgment on Plaintiff's remaining retaliation claims (enumerated in the Court's Order at Entry #158 at 5–6) in the following groupings ("Groupings"):

1. Denial of annual leave on June 2, 2009 (Claim 1);
2. Unsuccessful evaluation of March 2010 (Claims 4 and 11);
3. Conspiracy to impose 14-day suspension, November 2010 (Claims 6, 14, 17, 18);
4. Restricted from entering the 120th Battalion (Claim 7);
5. Told to have no contact with Moore (Claim 8);
6. Branda Scott told to attend Plaintiff's meetings with Leishman (Claim 9);
7. Management told IRD investigator that Plaintiff did not respond to the 10-day suspension (Claim 12); and
8. Reassignment of supervisors (Claims 13, 15, 16, and 19).

[Entry #168-1 at 1].

To set forth a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) an adverse employment action was taken against her;[1] and (3) there was a causal link between the protected activity and the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). If Plaintiff can establish the elements of her prima facie case, then the burden shifts to Defendant to proffer evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. *See*

---

[1] Plaintiff argues, without support, that "the Secretary's argument that Plaintiff's retaliation claims must meet the standard of 'an adverse employment action' is false." [Entry #175 at 1]. Without a showing of an adverse employment action, Plaintiff's retaliation claims fail.

4

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). At that point, Plaintiff has the opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 271 (4th Cir. 2001).

Defendant concedes for the purposes of his motion that Plaintiff has engaged in protected activity and that there was a temporal proximity between the protected activity and the Agency's actions. [Entry #168-1 at 2]. However, Defendant contends that Plaintiff cannot make a prima facie case of retaliation of Groupings 2–8 (encompassing Claims 4, 6–9, 11–19) because none could be construed as "materially adverse" acts. *Id.* Further, as to all the Claims, Defendant argues that he can show a legitimate, non-discriminatory reason that was not a pretext for unlawful discrimination for each action, which Plaintiff cannot rebut. *Id.*

        1.      Denial of Annual Leave on June 2, 2009

In Claim 1, Plaintiff alleges Leishman refused to approve eight hours of leave for June 2, 2009, and subsequently charged her as absent without leave ("AWOL"). [Entry #1 at 3]. Defendant argues that the Agency has articulated a legitimate, non-discriminatory reason for placing her on AWOL—that she was indeed AWOL on June 2. [Entry #168-1 at 3].

Plaintiff alleges she had been out of state on annual leave the weekend of May 28, 2009, and became sick. [Entry #168-3 at 4]. On Sunday, May 31, she left a voice mail message for Leishman on the office duty phone that she was sick and would "most likely not feel up to traveling back on Monday." *Id.* She called in again at 7:45 a.m. the following morning (Monday) and left a message that she did not feel well enough to

travel and requested sick leave for the day. [Entry #168-2 at 14]. Leishman called her back and left her a message. *Id.* She admits that, in his message, Leishman asked her to call back with specifics because he would not approve the leave for her travel back. *Id.* Plaintiff recalled that he called again later in the day and left another message to the effect that, "I needed to call him on his cell phone and talk to him about it again." [Entry #168-3 at 5]. She admits that she did not attempt to call him on his cell phone as he had requested, and she drove home Tuesday. *Id.* at 5–7.

> Plaintiff testified in her deposition as follows:
>
> A. [H]e said that I needed to call him on his cell phone and talk to him about it again. And I had tried again to get him on the office phone, because in all honesty, our building, it's one of the old buildings on the Army base there, phone reception for the cell phone is awful. We've all experienced it. So I was rather baffled as to why he would ask me to call his cell phone during duty hours when as far as I could tell, he was in the office and he was on his phone line. So, and also to be honest, I just—I wasn't feeling well, and trying to get him on his cell phone and I was really—
>
> Q. Did you try to get him on the cell phone?
>
> A. I did not. I called—I called the office phone again, and that way I knew he would be there in the office and he would answer or get the message, because he had gotten the previous messages . . .
>
> Q. Anyway, you didn't try the cell phone when he asked you to?
>
> A. I did not. I wanted to have a record of having called the office phone.
>
> Q. You didn't think that you could call both the cell phone and the office phone?
>
> A. I could have, but I chose not to, like I said, because I wasn't sure that he would get that phone call, because I knew that it was Monday, and I knew that he would be testing, and I couldn't see him having access to his cell phone. So I felt the safer bet was to leave the message where I left the

      message before on the office duty phone.  He had gotten those messages,
      and so I felt that was the safest thing to do.

[Entry #168-3 at 5–6].

      Defendant argues that because Plaintiff chose not to talk with Leishman, he did not approve her leave for June 2.  [Entry #168-1 at 6].  Whether or not she agreed with Leishman, Plaintiff chose to refuse her supervisor's reasonable instructions to call him back on his cell phone, which resulted in her absence on June 2 being classified as AWOL.  Her absence from work on June 2 without prior approved leave provides the Agency's legitimate, non-discriminatory reason for placing her in AWOL status for that day.

      The burden, therefore, shifts back to Plaintiff to show that Defendant's reasons for the AWOL are pretextual.  She has failed to meet this burden.  In her response, Plaintiff argues that "if Leishman had sufficient information from the Plaintiff to grant one day sick leave based on the phone messages between Leishman and the Plaintiff, then Leishman cannot claim he needed additional information to grant the Plaintiff one day annual leave to travel after her illness."  [Entry #175 at 2].  Plaintiff argues that it is "a question of common sense and reasonableness that if an individual is ill one day while 300 miles from home, then that individual would need the following day to travel home and so this act of retaliation clearly meets the standard set by the Title VII anti-retaliation provision."  *Id.*  Further, Plaintiff argues that "Leishman had no legal basis to direct the Plaintiff to call him on his personal cell phone when, during the duty day, Leishman had an assigned government phone on his desk, in his office on which he routinely conducted

7

daily official business, as was the Plaintiff's request for leave official business." *Id.* Plaintiff also argues that the Agency's policy stated that employees need only provide medical documentation if they request leave in excess of 72 hours. *Id.*

Plaintiff's response does not include any information demonstrating pretext. Because the June 2 AWOL occurred before Plaintiff filed her administrative complaint, any argument that she feared retaliation for filing the complaint (as opposed to discrimination) was premature. Based on the foregoing, the undersigned recommends that Claim 1 be dismissed because the Agency articulated a legitimate, non-discriminatory reason for its actions that Plaintiff cannot demonstrate is pretextual.

2. Unsuccessful Evaluation of March 2010

Plaintiff complains in Claim 4 that in March 2010, Leishman marked her unsuccessful in several areas on her performance evaluation and in Claim 11 that Moore concurred with Leishman's assessment. [Entry #1 at 4–5]. Defendant argues that the records show that, although the 2010 evaluation was "less affirming" than that of the previous year, it was not "unsuccessful," as Plaintiff claims. [Entry #168-1 at 8]. The records show that the annual performance appraisal Plaintiff received in March 2010 (effective June 1, 2010) listed her overall performance as acceptable. [Entry #168-5 at 2 "Appraisal Data" block]. Plaintiff admits that her ratings for the various factors on the evaluation were either "Slightly Below Fully Successful" or "Fully Successful," but contends that the ratings were lower than in previous years and that they went up again after Leishman departed. [Entry #175 at 4]. She asserts that her lower ratings for 2010

8

"coinciding with the Plaintiff filing the EEO complaint cannot be considered coincidental or a fair assessment of the Plaintiff's job performance." *Id.*

Defendant argues that the performance evaluations are not in themselves a materially adverse act, citing *James v. Booz–Allen & Hamilton, Inc*., 368 F.3d 371, 377 (4th Cir. 2004), in which the Fourth Circuit held that even "a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Defendant argues that Plaintiff's performance evaluations, noted to be satisfactory, would not deter a reasonable employee from engaging in protected activity, citing *Parsons v. Wynne*, 221 Fed. Appx. 197, 199 (4th Cir. 2007).

Plaintiff does not specifically respond to Defendant's argument, and she does not argue that the performance evaluations were materially adverse acts or that they were used as a basis to detrimentally alter the terms or conditions of her employment. The undersigned finds that the performance evaluations do not reflect an "unsuccessful" rating, as Plaintiff argues, but in fact, reflect that her overall performance was acceptable. Independently, because Plaintiff has not demonstrated that her evaluations constituted materially adverse acts or were used to alter her employment, she has failed to establish a prima facie case of retaliation. Therefore, summary judgment for Defendant on Claims 4 and 11 is appropriate.

### 3.   Conspiracy to Impose 14-day Suspension, November 2010

Plaintiff also alleges that her supervisors retaliated against her by conspiring to suspend her for 14 days in December 2010. Specifically, in Claim 6, she states that in

9

November 2010, Leishman conspired with Victor Palmer ("Palmer") to propose a 14-day suspension of Plaintiff without contacting her about her recollection of the incident underlying the proposed suspension; in Claim 14, she states in November 2010, Moore conspired with Leishman and Palmer to propose another 14-day suspension of Plaintiff; in Claim 17, she states that in November 2010, St. Peter conspired to serve her with a proposed 14-day suspension without speaking with her first regarding her recollection of the incident on which the suspension was based; and in Claim 18, she states that from December 10, 2010, through February 1, 2011, St. Peter did not respond to Plaintiff's rebuttal to the proposed 14-day suspension. [Entry #1 at 4–5].

Defendant argues the proposed suspension was not a "materially adverse action" because it was never imposed. [Entry #168-1 at 11]. Plaintiff admits that the suspension was never imposed, but asserts that "the proposed suspension itself clearly meets the standard for violation of the Title VII anti-retaliation provision." [Entry #175 at 7]. Plaintiff states that during the pendency of the proposed suspension, she feared she would be suspended. [Entry #175 at 7]. She states: "[T]he agency deliberately kept the proposed suspension hanging over the Plaintiff's head for nearly 8 weeks, from December 10, 2010 until February 1, 2011 (no coincidence this was only a few days after the Plaintiff added the proposed suspension to her informal EEO complaint) and had no intention of responding to the Plaintiff's rebuttal in a timely manner, another clear act of retaliation, allowing the Plaintiff to languish for weeks over possibly being suspended again (for no reason). The Agency clearly wanted to try and teach the Plaintiff a harsh lesson." *Id.*

Although Plaintiff may have feared suspension for approximately eight weeks, the undersigned concludes that the proposed suspension did not rise to the level of a materially adverse action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (unwilling to find adverse action where threat of proposed suspension, which arguably tarnished employee's reputation and caused emotional distress, is not actually served). Thus, the undersigned recommends summary judgment be granted on Claims 6, 14, 17, and 18.

                4.      Restricted from Entering the 120th Battalion on January 14, 2011

In Claim 7, Plaintiff alleges that in January and February 2011, Leishman issued an illegal, arbitrary order prohibiting her from going to the Batallion area, and that when Plaintiff challenged the order, St. Peter condoned it. [Entry #1 at 4]. Plaintiff argues that Leishman's order that she not go to the Battalion area "where she had just completed a 13 month assignment, it was not only unreasonable, it had no legal basis and Leishman had no legal authority to give the Plaintiff such an order." [Entry #175 at 7]. She asserts that this was "clearly another act of retaliation because Leishman was fully aware of the close relationship the Plaintiff had developed with several PAB employees and his illegal order was meant to injure the Plaintiff and impede her right to move freely about the battalion like any other employee." *Id.* Plaintiff complains particularly about Leishman's lack of authority to restrict her movements while she was officially on break and/or lunch period, arguing that "his action was purely retaliatory." *Id.*

11

Defendant argues that the supervisor's instruction that Plaintiff not socialize with her friends at the Battalion during work hours is not a "materially adverse action."[2] The undersigned agrees and finds that Leishman's instruction would not dissuade a reasonable person from engaging in protected activity. Therefore, the undersigned recommends the court grant Defendant summary judgment on Claim 7 for Plaintiff's failure to establish a prima facie case of retaliation.

### 5. Told to Have No Contact with Moore

In Claim 8, Plaintiff complains that on July 22, 2009, Moore directed Plaintiff to cease contacting her. [Entry #1 at 4]. Defendant argues that Plaintiff is overreacting to a minor management action, and that the directive from Moore was merely a reminder that Plaintiff should adhere to the chain of command. [Entry #168-1 at 12]. The email dated July 22, 2009, states as follows:

> Good morning Ms. Charlot,
> Effective immediately, pls work all issues through your first-line supervisor. Do not continue to copy me on e-mail traffic between you and Mr. Leishman. He will inform me of any issues that require my immediate attention.
> Dawn Moore, YC-02
> Chief, Nonresident Programs Division
> 671-378316

[Entry #168-7].

Moore addressed this issue in her declaration, when asked if she had information regarding Plaintiff's reprimand:

---

[2] Defendant also asserts that Plaintiff admitted she ignored the restriction and resumed meeting her friends in the Battalion area. [Entry #168-1 at 12]. However, Defendant failed to provide record for this statement, along with many other factual statements throughout his brief.

12

> No, the only thing was I contacted the Complainant because I was receiving several lengthy emails per day from her and told her I preferred she did not copy me because if the issues were not resolved with Mr. Leishman it may come to me for some type of action. I called and asked her to stop and if anything needed to be elevated Mr. Leishman would elevate it. I was getting so many emails for the complainant and Mr. Leishman was working with ER [Civilian Personnel Office, Employee Relations] and I was not in the loop. When I asked her to stop she complained about me not being supportive; that is when I picked up the phone and called her. I tried to explain I was not being unsupportive, but explained I would prefer not having only one side of the story at this time.

[Entry #168-8].

Plaintiff responds that the matter was not "minor" because she could not resolve her issues with her first-line supervisor, Leishman. [Entry #175 at 6]. Plaintiff claims that Moore "could not and would not be bothered by an employee, a female employee, who reported she (Plaintiff) felt threatened by a male supervisor who also happened to be an Army soldier who could've been suffering from PTSD or some other anger issues or sex discrimination issues with female employees, as the Plaintiff suspected." *Id.*

Defendant argues that Moore's directive that Plaintiff follow the chain of command is not a materially adverse action. The undersigned agrees. In *Taylor v. Geithner*, 703 F.3d 328 (6th Cir. 2013), the Sixth Circuit found that a letter documenting that the Plaintiff had failed to follow the chain of command was not a materially adverse action. Further, in *Helgeson v. American Intern. Group, Inc.*, 44 F. Supp. 2d 1091 (S.D.Cal. 1999), the court found that giving the plaintiff an oral reprimand for going outside the chain of command "did not affect the terms or conditions of employment." *Id.* at 1099. Similarly, the undersigned finds Plaintiff has failed to establish a prima facie

13

case of retaliation on Claim 8, and the undersigned recommends the court grant summary judgment to Defendant.

### 6.     Branda Scott to Attend her Meetings with Leishman

Plaintiff complains in Claim 9 that in July 2009, Moore directed Branda Scott to be present at meetings between Plaintiff and Leishman. [Entry #1 at 5]. Plaintiff's primary complaint about Moore directing Scott to be present at meetings between Plaintiff and Leishman is that Scott and Leishman are close friends and former roommates and that Plaintiff had no representation or witness present on her behalf. [Entry #175 at 4]. She asserts that being "subject[ed]" to numerous disciplinary meetings with Scott present constitutes retaliation. *Id.* Plaintiff argues that "[t]his tag team management approach would surely dissuade any reasonable employee from making a charge of discrimination because that employee would feel outnumbered and powerless to prove their version of events in these meetings." *Id.*

Defendant argues that having a witness to a disciplinary meeting is not a "materially adverse" action. [Entry #168-1 at 15]. The undersigned agrees. Especially in light of Plaintiff's representation in her response brief that she felt threatened by Leishman as "a male supervisor who also happened to be an Army soldier who could've been suffering from PTSD or some other anger issues or sex discrimination issues with female employees, as the Plaintiff suspected," Entry #175 at 6, Moore's directive to have Scott be present during meetings between Plaintiff and Leishman cannot be deemed a materially adverse action. Therefore, Plaintiff has failed to establish a prima facie case of

14

retaliation on this claim, and the undersigned recommends the court grant summary judgment to Defendant on Claim 9.

> 7. Management Told IRD Investigator that Plaintiff Did Not Respond to the 10-day Suspension

Plaintiff complains in Claim 12 that during sworn testimony to IRD Investigator Ross, Moore stated that Plaintiff had not submitted a response to her proposed 10-day suspension. [Entry #1 at 5]. Leishman issued the proposed 10-day suspension on September 28, 2009, and Plaintiff was given an opportunity to respond to the proposed suspension. Plaintiff has produced an e-mail addressed to Moore and dated October 1, 2009, establishing that she responded to the proposal. [Entry #168-9]. Apparently the first email did not go through to Moore. Plaintiff says it "came back 'undeliverable' because her mailbox is full" and she forwarded it on to Leishman for delivery to Moore. *Id.* Moore signed the Notice of Decision to Suspend for Ten Calendar days on or about November 9, 2009. [Entry #168-6]. In the Notice, Moore determined that a 10-day suspension was appropriate and explained the appropriateness of the decision in that, "I have reviewed the facts and circumstances in this case including your written response dated 1 Oct 09." *Id.* In the Notice of Suspension, Moore acknowledged that Plaintiff had submitted a response and correctly stated that it was dated October 1. *Id.* However, in her administrative response to the investigator's question concerning whether the "Complainant respond[ed] to the proposed suspension action?" Moore responded, "I did not get anything from her." [Entry #168-8].

Defendant argues that Moore's response was literally correct in that she did not get the email from Plaintiff herself, rather it came through Leishman, or that it is possible that Moore forgot that she had received the e-mail when she completed the declaration. [Entry #168-1 at 16]. Either way, Defendant argues the possible misstatement is not actionable retaliation. *Id.* Plaintiff responds that Moore must have read her email and lied about having not received it. [Entry #175 at 6].

Defendant cites to case law stating that Title VII "does not create an independent cause of action for the mishandling of an employee's discrimination complaints." [Entry #168-1 at 16 (citing *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991); *see Nichols v. Truscott*, 424 F. Supp. 2d 124 (D.D.C. 2006); *Nelson v. Greenspan*, 163 F. Supp. 2d 12, 18 (D.D.C. 2001) (dismissing claim that defendant failed to follow proper procedure in the processing of complaints which ultimately resulted in settlement agreement)]. Ultimately, because Moore considered Plaintiff's response, and Plaintiff suffered no harm from the incorrect statement about Plaintiff having responded to the Notice, Plaintiff cannot demonstrate the action was materially adverse. Therefore, Plaintiff has failed to establish a prima facie case of retaliation on Claim 12, and the undersigned recommends the court grant summary judgment to Defendant.

8.     Reassignment of Supervisors

Plaintiff complains that Moore conspired with other management officials to reassign Plaintiff from Leishman to Palmer on November 20, 2009 (Claim 13), to continue her under Palmer on July 23, 2010 (Claim 16), and then return her to

16

Leishman's supervision on January 4, 2011 (Claims 15 and 19).  [Entry #1 at 5–6]. Defendant argues the reassignments were due to Plaintiff's requests.  [Entry #168-1 at 17].

In a memorandum regarding her claims dated September 29, 2009, Plaintiff specifically complained that Moore "did not respond or even acknowledge receipt of my requests to be assigned to a new supervisor."  [Entry #165-1 at 6].  Defendant argues that the Agency granted Plaintiff's request a few weeks later, and that act cannot be construed as a retaliatory event.  [Entry #168-1 at 17].

Plaintiff admits she "did repeatedly and admittedly request to be assigned to a new supervisor," but contends that she "did not request to be assigned to an even more abusive supervisor than Leishman for over 13 months, so the reassignment was yet another clear act of retaliation that would dissuade any reasonable employee or job applicant from raising a charge of discrimination."  [Entry #175 at 5].  She claims her reassignment was from an Air Force GS-05 to Army GS-04 human resources position, and that she "lost that time as experience in her education and training field."  *Id.*

Leishman submitted a declaration in Plaintiff's second complaint pending before the EEOC (Agency Number 8Z0J11023), and explained that on or about November 20, 2009, Plaintiff was assigned a temporary detail to the 120th Battalion Headquarters PAB Section and that this detail was extended until July 23, 2010, and then ended January 3, 2011.  [Entry #168-10 at 8–9].  Leishman explained that the detail was intended to give "Ms. Charlot the opportunity to work on her claims pending the outcome of the investigation" of her claims against Leishman and management.  *Id.* at 9.  Once the

17

Administrative Law Judge ("ALJ") ruled that her claims were unsubstantiated and there was no wrongful treatment, Plaintiff was returned to her previous duty station and resumed her assigned duties. *Id.*

Courts have held that transfer or denial of a request to transfer to a new supervisor is not an adverse action. *See Martin v. Locke*, 659 F. Supp. 2d 140, 148 (D.D.C. 2009) (holding that transfer to a new supervisor who is rumored to be "difficult" and has been previously accused of discrimination is not an adverse employment action); *Akosile v. Armed Forces Retirement Home*, 938 F. Supp. 2d 76, fn. 8 (D.D.C. 2013) (finding that a denial of transfer request away from a supervisor with whom the plaintiff does not get along is the type of "purely subjective injur[y]" that does not affect the terms, conditions or privileges of employment).

Thus, because Plaintiff's transfers were not materially adverse acts, Plaintiff cannot establish a prima facie case of retaliation on this claim, and the undersigned recommends the court grant summary judgment to Defendant on these claims.

Even if one or both transfers were considered a materially adverse act, Defendant has articulated a legitimate, non-discriminatory reason for the reassignments. First, the Agency reassigned Plaintiff to Palmer because she had filed EEO charges against Leishman and the reassignment would give her space to pursue those issues. Plaintiff requested and received a new supervisor. Likewise, Defendant explained that Plaintiff was transferred back to her previous duty station once the ALJ had ruled on her claims. This explanation is in keeping with the rationale offered for the reassignment to Palmer.

18

Because Plaintiff has failed to set forth any evidence demonstrating pretext, the undersigned recommends summary judgment be granted as to Claims 13, 15, 16, and 19.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Defendant's motion for summary judgment [Entry #168] be granted as to the remaining retaliation claims.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

February 19, 2014                                          Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).